IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

|  |  |
|---|---|
| IN RE ) | |
| ) | |
| DENNIS KNIPPERS, ) | CASE NO. 06-34841-H3-13 |
| ) | |
| Debtor, ) | |
| ) | |

MEMORANDUM OPINION

The court has held a hearing on confirmation of the "Uniform Plan and Motion for Valuation of Collateral" (Docket No. 21) filed on November 8, 2006. The following are the Findings of Fact and Conclusions of Law of the court. A separate Judgment will be entered denying confirmation of the plan, without prejudice to the filing of an amended plan. To the extent any of the Findings of Fact are considered Conclusions of Law, they are adopted as such. To the extent any of the Conclusions of Law are considered Findings of Fact, they are adopted as such.

Findings of Fact

Dennis Knippers ("Debtor") filed a voluntary petition under Chapter 13 of the Bankruptcy Code on September 19, 2006. William E. Heitkamp ("Trustee") is the Chapter 13 Trustee.

Debtor testified that, from October, 2005 through October, 2006, a time period which includes the six month period ending on the last day of the calendar month immediately preceding commencement of the instant case, Debtor was employed

as a millwright, by Quality Assurance Support Group, LLC. ("QA")

Debtor testified that, while he worked at QA, he earned a basic pay rate of $23 to $26 per hour.  He testified that the job at QA was assigned by Debtor's labor union.  He testified that, during the six month period immediately preceding commencement of the instant case, he was assigned to work extensive overtime.

The 2005 federal income tax return for Debtor and Debtor's wife indicates gross income of $79,604 for 2005.

Debtor's pay at QA, from the beginning of 2006 through September 3, 2006, totaled $58,682.58.  Debtor had also received net reimbursement[1] of $6,584.67 during the same time period. (Debtor's Exhibit A, at p. A-9).

On the petition date, September 19, 2006, Debtor filed a "Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income" ("Form B22C").  Debtor identified a total of $9,020.90 in average monthly income for Debtor and Debtor's spouse, for the six months prior to the filing of the instant case.  Debtor's Form B22C indicates annualized current monthly income of $108,250.80.  Debtor identified a family size of six, and, because Debtor's annualized current monthly income exceeded the median income for a family of six in Texas, determined that the applicable commitment period

---

[1] This amount includes items labeled as mileage reimbursement, per diem, expense reimbursement, and meals.

2

for the plan is five years.  (Docket No. 3).

Debtor's Form B22C identifies deductions asserted to be allowed under Section 707(b)(2) of the Bankruptcy Code, in the monthly amount of $7,129.68.  Thus, Debtor's Form B22C identifies $1,891.22 in disposable income.  (Docket No. 3).

On the petition date, Debtor filed schedules I and J. Debtor's initial schedule I identifies gross income of $4,647.06 per month.  Debtor's initial schedule J identifies total monthly expenses of $2,905.00 per month, leaving monthly net income of $1,256.39.  (Docket No. 1).  Debtor subsequently amended schedules I and J to reflect that Debtor's 26 year old son was no longer a dependent, and that Debtor's expenses were reduced to $2,595.00, leaving monthly net income of $1,566.39.  (Docket No. 20).

Debtor testified that he is unaware of the manner in which his income, as it appears on Schedule I, was calculated.

Debtor testified that, since the filing of the petition, his work has been less steady.  He testified that he was laid off by QA in November, 2006, worked for part of November, 2006, and then did not work until February, 2007.  He testified that, at his most recent job, assigned by the union, he received wages of $21.83 per hour.  He testified that he seeks out overtime whenever it is offered, but that he is assigned overtime work much less frequently than when he worked for QA.

He testified that, on the date of the hearing on confirmation, he was laid off.

Debtor testified that he is paid weekly by his various employers. He testified that he goes to work when the union sends him. Debtor's pay records for the weeks ending October 11, 2006 through December 6, 2006 indicate total gross earnings of $15,279.13 for that nine week period. (Debtor's Exhibit A, at p. A1-A3).

In Debtor's plan, Debtor proposes to pay $1,255 in the first month, then $1,565 in the next 59 months, to the Chapter 13 Trustee, for distribution to creditors. The plan proposes distribution to Debtor's counsel, on a secured claim on a vehicle, on regular monthly mortgage payments and a mortgage arrearage, and proposes a distribution that will allow payment of approximately 9% of unsecured claims.

Trustee objects, for the reason that multiplying the disposable income appearing on Form B22C by the applicable commitment period yields a sum sufficient to pay all scheduled unsecured creditors in full. Trustee thus argues that Debtor must provide for payment to unsecured creditors in full.[2]

Debtor's schedule F indicates $14,131 in unsecured claims.

---

[2] Trustee's argument was expressed in Trustee's motion to dismiss. However, Trustee stated at the hearing that he does not oppose allowing Debtor to amend the plan.

<u>Conclusions of Law</u>

The question of whether a Debtor must mechanically apply the numbers in Form B22C to determine "projected disposable income" to satisfy Section 1325(b)(1)(B) of the Bankruptcy Code is a question of first impression in this court.

Section 1325(b)(1)(B) of the Bankruptcy Code provides:

> If the trustee or holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan-
>
> * * *
>
> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

11 U.S.C. § 1325(b)(1)(B).

Section 1325(b)(2) of the Bankruptcy Code provides in pertinent part:

> For purposes of this subsection, the term "disposable income" means current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependant child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended-
>
> (A)(i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed; and

>   (ii) for charitable contributions ... in an amount not to exceed 15 percent of gross income of the debtor for the year in which the contributions are made.

11 U.S.C. § 1325(b)(2).

Section 101(10A) of the Bankruptcy Code defines "current monthly income" as:

> (A) ...the average monthly income from all sources that the debtor receives ... without regard to whether such income is taxable income, derived during the 6-month period ending on-
>
>> (i) the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by section 521(a)(1)(B)(ii) ... and
>
> * * *
>
> (B) includes any amount paid by any entity other than the debtor ... on a regular basis for the household expenses of the debtor or the debtor's dependants ... but excludes benefits received under the Social Security Act ...

11 U.S.C. 101(10A) (2005).

The courts are divided in construing Section 1325(b)(1)(B).  One line of cases, following In re Barr, 341 B.R. 181 (Bankr. M.D.N.C. 2006) and In re Alexander, 344 B.R. 742 (Bankr. E.D.N.C. 2006), holds that Congress intended the word "projected" in Section 1325(b)(1)(B) to mean that the "currently monthly income" figure from B22C must be "multiplied (projected out)" by the number of months of the proposed plan.  See In re Kibbe, 2007 WL 512753 (1st Cir. BAP 2007); In re Brady, 2007 WL 549359 (Bankr. D.N.J. 2007); In re Hanks, 2007 WL 60812 (Bankr.

6

D. Utah 2007); In re Tranmer, 355 B.R. 234 (Bankr. D. Mont. 2006).  The rationale advanced in these cases is that the plain language of Section 1325(b)(1)(B) compels this result, because not linking "disposable income" in Section 1325(b)(2) to "projected disposable income" in Section 1325(b)(1)(B) leaves the definition of "disposable income" in Section 1325(b)(2) as a "floating definition with no apparent purpose."  Alexander, 344 B.R., at p 749.

A second line of cases, following In re Hardacre, 338 B.R. 718 (Bankr. N.D. Tex. 2006) and In re Jass, 340 B.R. 411 (Bankr. D. Utah 2006), holds that "projected" means that "the number resulting from Form B22C is a starting point for the Court's inquiry only ... The significance of the word 'projected' is that it requires the Court to consider both future and historical finances of a debtor in determining compliance with § 1325(b)(1)(B)."  Jass, 340 B.R., at p. 415-416.  See In re Riggs, 2007 WL 601535 (Bankr. E.D. Ky. 2007); In re Hall, 2007 WL 445517 (Bankr. C.D. Ill. 2007); In re LaPlana, 2007 WL 431627 (Bankr. M.D. Fla. 2007);  In re Zimmerman, 2007 WL 295452 (Bankr. N.D. Ohio 2007); In re Devilliers, 2007 WL 92504 (Bankr. E.D. La. 2007); In re Teixeira, 2006 WL 3780539 (Bankr. D.N.H. 2006).  The rationale set forth in these cases is that mechanical application of Form B22C produces an absurd result, and renders the language "to be received" in Section 1325(b)(1)(B) meaningless.

7

Two courts have attempted to harmonize the two lines of cases. In In re Miller, 2007 WL 128790 (Bankr. N.D. Ala. 2007), the court held that, in determining whether a plan proposed to pay all of the debtor's projected disposable income, the court may consider "special circumstances that make actual expenses or adjustments to income necessary and reasonable," under Section 707(b)(2)(B). Thus, the court need not either mechanically apply Form B22C or reject B22C in favor of Schedules I and J as a determinant.

The court in In re Slusher, 2007 WL 118009 (Bankr. D. Nev. 2007) held that the definition of "disposable income," as calculated pursuant to Form B22C, is not a definition for the term "projected disposable income" within Section 1325(b)(1)(B), but creates a presumption regarding the meaning of that term.

This court believes that the rationale in Slusher allows for the appropriate resolution of issues arising regarding projected disposable income. Form B22C provides a presumptive definition of projected disposable income, but the presumption may be rebutted.

In the instant case, under any of the approaches identified by the various courts, the plan fails to meet the standard. Debtor's testimony and the documentary evidence presented indicates that Debtor's income, on the petition date and thereafter, was greater than that set forth on Schedule I.

8

Debtor's plan thus does not provide that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.  This is true whether such projected disposable income is calculated based on Debtor's testimony or on Form B22C.  In preparing an amended plan, Debtor should be mindful of the need to amend the schedules to make them complete and accurate.  Additionally, if Debtor chooses to seek confirmation of a plan which does not meet the presumptive test of "projected disposable income" under Form B22C, Debtor should move for permission to deviate from the standard form of Uniform Plan, for the sole purpose of giving notice to creditors of Debtor's intent to seek confirmation of a plan providing for calculation of "projected disposable income" in a manner other than the presumptive calculation of Form B22C.[3]

      Based on the foregoing, a separate Judgment will be entered denying confirmation of the plan, without prejudice to the filing of an amended plan.

      Signed at Houston, Texas on April 26, 2007.

*[signature]*

LETITIA Z. CLARK
UNITED STATES BANKRUPTCY JUDGE

---

[3]The court notes that the Local Rules require that such a motion be filed with the petition.  In the instant case, because a question of first impression was presented, the court will allow Debtor to file such a motion, within 20 days after the date of entry of the Judgment.